26609.   RED LINE PRODUCTS COMPANY *v.* J. M. HIGH
COMPANY.

DECIDED FEBRUARY 11, 1938.

*Herbert J. Haas, Joseph F. Haas, Bertram S. Boley,* for plaintiff in error.

*Hooper & Hooper,* contra.

SUTTON, J.   J. M. High Company filed a petition, in aid of an attachment levied by service of garnishment, against Red Line Products Company, a non-resident, alleging that the defendant was indebted to it in the sum of $1294.99 for merchandise, the receipt of which was evidenced by a credit memorandum issued under date of May 17, 1932, a copy of which was attached to the petition as exhibit A, in the amount of $1574.93, against which the defendant was entitled to a credit of $279.94, leaving the balance above named due the plaintiff with interest at 7 % per annum from May 17, 1932, all of which the defendant had refused to pay; that contemporaneously with the execution and delivery of the credit memorandum the parties entered into a certain contract, dated April 27, 1932, a copy of which was attached to the petition as exhibit B and made a part thereof, and which provided, among other things, as follows: "For and in consideration of the purchase of merchandise this day made from the party of the first part by the party of the second part in sufficient amount to consume credit memorandum in full on basis as named below, to be delivered from time to time upon the orders and specifications of the party of the second part within a period of two years from the date thereof, at the current printed Red Line Red List in effect on date order is received by the party of the first part, said party of the first part has this day accepted from the party of the second part, but for credit only on the aforesaid purchase contract, certain salable merchandise of the party of the second part to the amount of $1574.93 as per list attached hereto,

the same to be applied from time to time as forty-five per cent. credit on each invoice of merchandise as shown on Red Line Red List of the party of the first part, sold and to be delivered hereunder, as the same is specified and ordered out by the party of the second part, in accordance with the following limitations and restrictions: (1) It is understood that the title to said merchandise accepted hereunder is this day vested in the party of the first part, and the same is to be delivered to the party of the first part or any person or firm it may name upon written orders to that effect to the party of the second part. . . (3) Should the party of the second part for any reason whatsoever not promptly make shipment of said merchandise after notification by party of the first part, party of the second part agrees to pay to party of the first part 30 % of the amount covering the merchandise as sold to the party of the first part, as liquidated damages for breach of this contract. Said payment to be made in cash within ten days from date of shipping instructions from party of the first. part. (4) In the event that the party of the second part should, for any reason whatsoever, fail to use the full amount of credit issued hereunder, in the manner herein provided, within said period of two years, then any part of the credit remaining unconsumed shall become the property of the party of the first part as liquidated damages for the breach of this contract, and in full settlement of all claims for damages which the party of the first part might have against the party of the second part for said breach; however, if at any date before the expiration of this contract, should the party of the second part make an additional trade, the expiration date of this contract is automatically extended two years from date of such additional trade. (5) Terms and discounts on all invoices of the party of the first part against the party of the second part as the goods purchased hereunder are ordered out from time to time shall be as follows: Forty-five per cent. of the amount of such invoices to be charged against the aforesaid credit, the other fifty-five per cent. to be paid in cash within ten days from the day of shipment. . . (9) No agreement other than that printed hereon will be recognized. (10) No oral or written agreement or statement of any kind will be binding on party of the first part or be considered a part of this contract unless duly signed by an official of this company."

It was further alleged that under the terms of said contract the plaintiff delivered to the defendant and the defendant accepted from plaintiff the merchandise therein referred to in the amount of $1574.93, the purchase-price of which is sued for, and that pursuant to said contract the plaintiff had the right, within a period of two years thereafter, to order and receive from the defendant company articles sold by it "'at the current printed Red Line List in effect on date order was received' by defendant company;" that (par. 6) at the time of execution of said contract (referred to as exhibit B) defendant company exhibited to plaintiff a certain paper entitled "Red Line Red List," bearing date April 1, 1932, and containing a list of articles of merchandise then being sold by defendant company to retail merchants, and expressly represented and agreed with plaintiff that the term "current printed Red Line List in effect on date order is received by the party of the first part" appearing on said contract should refer and did refer to future price lists to be put out by the defendant from time to time containing the same articles of merchandise contained on the Red Line Red List then exhibited to plaintiff, but that the prices which would appear opposite said articles on such current printed Red Line Red List would be subject to change but would be at the current prices being then offered by defendant company to the general trade; that (paragraph 7) pursuant to said contract and agreement plaintiff sent orders to defendant company from time to time for merchandise appearing on said Red Line Red List, no objection was made to plaintiff's right to order the same but said orders were filled by defendant, and the plaintiff paid 55 % of the then current list price of the same and credited defendant company with 45 % of said list price as provided for in said contract (exhibit B) ; the defendant company has received credits by plaintiff to the extent of $279.94 upon said total amount of $1594.53 ($1574.93) representing agreed price of merchandise delivered by plaintiff to defendant as aforesaid. "Petitioner shows that defendant company not only expressly agreed that the phrase 'current Red Line Red List' as contained in said contract meant said original Red Line Red List as to articles with current prices thereon, but accepted orders from plaintiff of articles as contained on said original Red Line Red List and invoiced the same to plaintiff, charging plaintiff

55 % of the list price in cash and allowing plaintiff 45 % of said list price by way of merchandise credits as contemplated by said contract; that [paragraph 8] on September 19, 1932, defendant company issued and delivered to plaintiff what was termed a 'Red Line Red List' containing only sixty-six (66) items which also appeared on the said original Red Line Red List, said new list also allowing 45 % merchandise credit and bearing the notation 'prices subject to change without notice.' The defendant then contending that it had the right to omit from said original list of April 1, 1932, a large number of the items therein contained, to which contention of the defendant this plaintiff objected; that [paragraph 9] on March 23, 1933, the plaintiff requested defendant company to ship to plaintiff a number of articles included on the Red Line Red List dated April 1, 1932, (hereinafter referred to as 'the original Red. Line Red List'), and defendant delivered the same to plaintiff, but instead of invoicing the same to plaintiff upon the terms provided in said contract, to wit, 55% cash and 45 % merchandise credit, defendant sought to force upon plaintiff a new basis of merchandise credit allowances. That the items so ordered by plaintiff were invoiced by defendant to plaintiff at a total cost of $126.89, but defendant sought to give plaintiff a merchandise credit of only $41.17, or approximately 33 % of defendant's then current selling prices, instead of a merchandise credit of 45 % thereof as contemplated by the contract between the parties. Said refusal by defendant company to give plaintiff said merchandise credit allowances as contemplated constituted a breach of contract between the parties; that [paragraph 10] thereafter, and on October 1, 1932, notwithstanding the contract between the parties hereinabove referred to, which had been acted upon by the parties, defendant company then issued what is termed a cooperative price list purporting to be 'for Red Line contract customers only,' containing three hundred and fifty-two (352) items of merchandise, some of said items (including St. Joseph's Mineral Oil, St. Joseph's Rubbing Alcohol, Penetro Mutton Suet Salve, and other items) were included on said original Red Line Red List, and other items not included on said original Red Line Red List. Said list of October 1, 1932, however, according to its terms, did not allow to petitioner its 45 % merchandise credit as agreed upon, but sought to impose upon plain-

tiff a different rate of credits. To illustrate, St. Joseph's Mineral Oil was priced at $3.40 per 16 ounces, of which amount $1.16 or approximately 34 % constituted merchandise credit instead of 45 % as agreed. St. Joseph's Genuine Pure Aspirin, 60 cts. size was listed at $3.06 per gross, of which only 18 cts. or approximately 6 % of the cost thereof was allowed as merchandise credit instead of the agreed 45 %. St. Joseph's lead pencils listed at $2.00, of which only 44 cts. or approximately 20 % constituted a merchandise credit. Said list also provided 'All orders are subject to acceptance of the Memphis office and their execution is contingent upon delays and other conditions beyond control;' that [paragraph 11] on April 26, 1934, plaintiff having ordered from defendant 5 gross of St. Joseph's lead pencils, under which order petitioner was entitled to a merchandise credit of 45 % of the list price of $9, received invoice from defendant allowing to plaintiff a merchandise credit of only $3.25 instead of a 45 % credit or $4.05; petitioner shows [paragraph 13] that defendant was not justified in refusing to sell and deliver items ordered by plaintiff on said original list of April 1, 1932, according to the terms of said contract, and plaintiff alleges that the refusal of defendant company to sell to plaintiff the best advertised and most desirable items contained on said original list by giving 45 % merchandise credit as aforesaid was a violation of the contract between plaintiff and defendant, and prevented plaintiff from consuming said balance of merchandise credit in the manner contemplated, to wit, by ordering from defendant company the most desirable articles on said original list and receiving in connection therewith said 45% merchandise credit; that [paragraph 14] under the original contract, as shown by invoice referred to as exhibit A to plaintiff's petition, the plaintiff was entitled to receive for its goods delivered to defendant the agreed purchase-price of $1574.93; that plaintiff was paid upon said agreed purchase-price by the defendant the sum of $279.94 in part by means of 45 % merchandise credits upon orders sent by plaintiff to defendant under said contract and filled by defendant pursuant to the same, thereby leaving a balance of $1294.99 with legal interest thereon, the same being the balance of said agreed purchase-price due to plaintiff by defendant; that plaintiff was able and willing and actually offered and attempted to have said balance due paid by defendant

company pursuant to the terms of said contract as above set out, but defendant company failed and refused to pay for the same in such manner, and consequently is indebted to plaintiff in said sum; that [paragraph 15] in order to enforce a collection of said sum [plaintiff sued out an attachment and had same levied by service of garnishment upon certain named persons]."

The defendant demurred generally and specially on a number of grounds, and had duly certified and filed its exceptions pendente lite to the judgment of the court in respect to certain grounds which, among others, it overruled, as follows: "Ground 1. Defendant demurs generally to plaintiff's declaration in attachment as amended upon the ground that said declaration in attachment, neither as a whole nor in any of its several parts, sets forth a cause of action against this defendant. Ground 2. Defendant demurs generally to plaintiff's declaration in attachment as amended on the ground that the allegations contained therein show that the breach of contract alleged by plaintiff was waived by plaintiff's acceptance from defendant of merchandise at prices and discounts different from those set forth in the Red Line Red List dated April 1, 1932. Ground 3. Defendant demurs generally to plaintiff's declaration in attachment as amended upon the ground that said declaration in attachment as amended does not set forth a cause of action against this defendant, for the reason that nowhere therein does the plaintiff allege that the defendant failed and refused to ship to plaintiff goods ordered from the current printed Red Line Red List in effect on the date the plaintiff's order was received by the defendant. Ground 4. Defendant demurs generally to plaintiff's declaration in attachment as amended upon the ground that said declaration in attachment as amended does not set forth a cause of action against this defendant, for the reason that plaintiff does not allege any legal grounds justifying its failure to use its full amount of credit within two (2) years from April 27, 1932, as required by the contract between the parties, exhibit B herein. Ground 5. Defendant demurs to that portion of paragraph six of plaintiff's declaration in attachment as amended which reads: ' . . and expressly represented and agreed with plaintiff that the term "Current printed Red Line Red List in effect on date order is received by the party of the first part" appearing on said contract should refer and did refer to future

price lists to be put out by the defendant from time to time containing the same articles of merchandise contained on the Red Line Red List then exhibited to plaintiff, but that the prices which would appear opposite said articles on such current printed Red Line Red Lists would be subject to change, but would be at the current prices being then offered by defendant company to the general trade,' and moves to strike the same on the ground that the aforesaid allegation seeks to vary the terms of an unconditional contract in writing (exhibit B herein), which does not contain the representation and agreement alleged by the plaintiff. Ground 6(b). Defendant demurs to said paragraph seven on the ground that the allegations contained therein are vague, indefinite, and uncertain, for the reason that plaintiff does not set forth the dates on which plaintiff ordered merchandise from the defendant, nor from which Red Line Red List orders were made, and because, therefore, said paragraph as it now stands conflicts with paragraphs nine, ten, and eleven of said declaration in attachment as amended, in which paragraphs plaintiff alleges that defendant refused to ship merchandise ordered from the Red Line Red List and refused to credit plaintiff with forty-five (45%) per cent. of the purchase-price, whereas paragraph seven affirmatively alleges that defendant did allow plaintiff to order from the Red Line Red List and did give credit on a forty-five (45 %) per cent. basis; and because said paragraph seven renders the entire declaration vague, indefinite, and uncertain in that it does not appear in said declaration whether defendant allowed or refused to allow plaintiff to order from current Red Line Red Lists, or if defendant did so refuse when such refusal occurred, nor does it appear from said declaration whether defendant refused to allow plaintiff a forty-five (45 %) per cent. credit or did not so refuse, or if it did refuse when such refusal took place. Ground 6(c). Defendant demurs to that portion of paragraph seven of plaintiff's declaration in attachment as amended which alleges: 'Petitioner shows that defendant company not only expressly agreed that the phrase 'Current Red Line Red List' as contained in said contract meant said original Red Line Red List as to articles with current prices thereon . . ', and moves to strike the same for the reason that the aforesaid allegation seeks to vary the terms of an unconditional contract in writing (exhibit B herein), which contract does

not contain the agreement alleged by the plaintiff. Ground 7. Defendant demurs to that portion of paragraph nine of the plaintiff's declaration in attachment as amended which reads: 'That on March 23, 1933, the plaintiff requested the defendant company to ship to plaintiff a number of articles included on the Red Line Red List dated April 1, 1932 (hereinafter referred to as the "original Red Line Red List"), and the defendant delivered the same to plaintiff, but instead of invoicing the same to plaintiff upon the terms provided in said contract, to wit, 55% cash and 45% merchandise credit, defendant sought to force upon the plaintiff a new basis of merchandise credit allowances,' and moves to strike the same on the ground that the aforesaid allegation seeks to modify, vary, and change the terms of an unconditional contract in writing, which specifically provided that plaintiff was to purchase merchandise 'at the current printed Red Line Red List in effect on the date order is received,' in that plaintiff does not allege either (1) that the Red Line Red List dated April 1, 1932, was the 'current printed Red Line Red List in effect' on March 23, 1933, or (2) that said articles ordered by plaintiff appeared on the 'current printed Red Line Red List in effect' on March 23, 1933. Ground 11(b). Defendant demurs to that portion of paragraph thirteen of the plaintiff's declaration in attachment as amended which reads: 'Defendant was not justified in refusing to sell and deliver items ordered by plaintiff on the said original list of April 1, 1932, according to the terms of said contract, and plaintiff alleges that the refusal of the defendant company to sell to plaintiff the best advertised and most desirable items contained on said original list by giving 45 % merchandise credit as aforesaid was a violation of the contract between plaintiff and defendant and prevented plaintiff from consuming said balance of merchandise credit in the manner contemplated,' and moves to strike the same, for the reason that the aforesaid allegation seeks to vary the terms of an unconditional contract in writing which specifically provided that the plaintiff was to purchase merchandise at the 'current printed Red Line Red List in effect on the date order is received by the party of the first part' (defendant)."

The defendant filed an answer, denying that it had committed any breach of the contract and asserting that under its terms the plaintiff's failure to consume the credit memorandum within the

two-year period rendered it void, and further set up the defense that if it had committed any breach it had been waived by the plaintiff and that it had accepted benefits under a modification of the contract, and that the original contract was modified by an express novation of the parties in 1934, and that under the terms of such novation the plaintiff had failed to perform and the credit memorandum had become void.

A trial was had before a judge of the municipal court of Atlanta without the aid of a jury, and judgment was rendered for the plaintiff for $932.22 principal, $215 interest, and costs. The case is here on bill of exceptions assigning error on the judgment of the court in overruling certain general and special grounds of demurrers as set out in the exceptions pendente lite, the judgment of the court overruling a motion for nonsuit, and the judgment of the court overruling the defendant's motion for new trial, the grounds of which are not here set out, because, in the view we take of the case, it is controlled by the ruling on the demurrers.

It appears from the petition that on April 27, 1932, the plaintiff and the defendant entered into a written agreement whereby the plaintiff was to purchase merchandise from the defendant within a two-year period, and that under the contract the defendant accepted from the plaintiff certain merchandise at an agreed value for which it was to issue a conditional or qualified "credit memorandum" to the plaintiff. The written contract contemplated that the plaintiff buy from the defendant such a quantity of merchandise that 45 % of the amount purchased would in two years consume the amount of the conditional or qualified "credit memorandum." The amount of the goods received from the plaintiff being $1574.93, the plaintiff, in order to utilize the total benefits of the credit, would be obliged to buy $3543.40 worth of merchandise from the defendant, because it would require 45 % of that amount to equal the amount of the "credit memorandum." Title to the goods delivered to the defendant was to vest immediately in the defendant, and, while the plaintiff might avail itself of the possible benefits of the "credit memorandum" by making purchases from the defendant and paying only 55 % of the amount of the invoices in cash, applying 45 % of the amount of the invoices against the credit, any part of the amount of $1574.93 not so consumed in two years would be retained by the defendant as

damages for the failure of the plaintiff to buy from it the amount of merchandise it had agreed to purchase. The contract further provided that goods purchased were to be from "the current printed Red Line Red List in effect on date order is received by the party of the first part," the Red Line Products Company. It is shown by the allegations of the petition that a "Red Line Red List" of merchandise was exhibited to the plaintiff at the time the written contract was entered into, and that the plaintiff purchased goods from time to time, paying 55 % of the invoices in cash and being allowed to apply 45 % of the amount of the invoices against the "credit memorandum;" but it appears that on September 19, 1932, the defendant issued a "Red Line Red List" containing only 66 items which had appeared on the list first exhibited to the plaintiff. Up to this time no issue had arisen between the parties as to performance by either under the contract. The substance of the complaint is that, by reason of the failure of the defendant to permit the plaintiff to purchase goods as enumerated on the original list on the terms specified in the contract which had been entered into, the plaintiff was unable to avail itself of the full amount of the "credit memorandum" within the two-year period and was damaged in the amount sued for. It was alleged in the petition that, at the time of the making of the written contract, certain oral agreements were had between the parties as to the meaning of the expression, "at the current printed Red Line Red List in effect on date order is received" by the defendant; and it is contended by the plaintiff, who is the defendant in error before this court, that, because of ambiguity in the quoted language, the allegations were proper.

The preceding analysis brings us now to a consideration of the special and general demurrers, the grounds of which have already been set forth in detail. Ground 6 (b), which relates to certain allegations of the plaintiff as to ordering from the defendant's Red Line Red List and receiving proper discounts before the list was reduced on September 19, 1932, to 66 items is apparently abandoned and not insisted on by the plaintiff in error. Grounds 5, 6 (c), and 11 (b) relate to allegations of the petition in which the plaintiff seeks to show that at the time of the negotiations certain representations were made by the defendant as to the meaning of the term "current printed Red Line Red List in effect on

date order is received;" as to an agreement that the expression meant the list first exhibited to the plaintiff; and that the refusal by the defendant to sell goods ordered on April 26, 1934, on the terms named in the contract, was a violation thereof. It will be observed from the petition that the plaintiff is not alleging that, independently of any oral promises or agreements, there was in effect, at the time the plaintiff was not allowed the discounts mentioned in the written contract of April 27, 1932, any Red Line Red List which contained articles of merchandise which the plaintiff desired to purchase on the terms contended for. The contention is, rather, that under the oral representations and oral agreement the original list was to be maintained and made available to the plaintiff during the two-year period. Manifestly, unless the language in question is ambiguous, parol evidence would not be admissible to vary the terms of the written contract. In that respect we think the grounds of the special demurrers are well taken, because, in our opinion, the language of the written contract is perfectly plain and can only mean that the plaintiff's purchases were to be made from such list of articles as would be in existence, or *current,* at the time the orders were received by the defendant. The particular language here involved does not seem to have been considered by the appellate courts of this State heretofore, but a similar phrase was before the court in an Alabama case, Imperial Motorcar Co. *v.* Skinner 16 Ala. App. 443 (78 So. 641). In a contract of agency it was provided: "The dealer will sell new Hudson pleasure motorcars of the current models as described in the catalogue of the Hudson Motorcar Company of Detroit, Mich." Error was assigned on the refusal of the trial court to charge that unless the cars sold, and for which commission was claimed, were described in the catalogues of the Hudson Motorcar Company at the time of the execution of the contract the plaintiff could not recover. The court held that the "current catalogues" referred to in the contract could only mean such catalogues as should be issued from time to time by the manufacturer during the life of the contract, and that the trial court did not err in refusing to give the requested charge. Such a construction is even more demanded in the present case where the words, "current printed Red Line Red List" is followed by the language, "in effect on date order is received." If any lack of definiteness could possibly be urged to

the first part of the expression, certainly it is made entirely clear by the explanatory statement which immediately follows it. Under its terms the defendant, however disadvantageous it might have been to the plaintiff, had the right to change or modify the list of merchandise from time to time, and was not bound to include in any subsequent list, current at the time orders were received, any of the items shown on the original list; provided, however, that in ordering from such list then in effect the plaintiff would be required to pay only 55 % of the amount of the invoice in cash, applying 45 % of the amount of the invoice against the "credit memorandum." It appears that the defendant issued from time to time lists not referred to in the original contract, these being known as "Cooperative Lists," and that the privilege of ordering from such lists was incidentally given the plaintiff as one holding a merchandise exchange contract. Such Cooperative List, however, was not controlled by the written contract as to the proportion of cash to be paid and the amount to be applied against the "credit memorandum." The plaintiff saw fit to order certain goods from such list, and alleges that the defendant unjustly refused to allow the discounts provided by the written contract. This contention can not be entertained. To approve it would be to add terms to an unconditional written contract which expressly provided: "(9) No agreement other than as printed hereon will be recognized. (10) No oral or written agreement or statement of any kind will be binding on party of the first part or be considered a part of this contract unless duly signed by an official of this company." Pleadings which attempt to contradict and vary an unconditional written contract by setting up a contemporaneous parol agreement contrary to the writing are subject to demurrer. *Gibson* v. *First National Bank,* 158 *Ga.* 350, 353 (123 S. E. 606). Where parties have reduced to writing what appears to be a complete and valid contract, which contains a stipulation that no agreement other than as printed therein will be recognized, it will, in the absence of fraud, accident or mistake, be conclusively presumed that the writing contains the entire agreement, and parol evidence of prior or contemporaneous representations, statements or agreements in regard to the subject-matter is inadmissible to add to, take from or vary the written instrument. *Automobile Battery Co.* v. *Geraghty,* 30 *Ga. App.* 446 (3) (188 S. E. 412);

316

*Outcault Advertising Co.* v. *National Furniture Co.,* 7 *Ga. App.* 150, 152 (66 S. E. 480); *Georgia Agricultural Works* v. *Price,* 11 *Ga. App.* 80, 83 (74 S. E. 718); *Barrie* v. *Smith,* 105 *Ga.* 34 (31 S. E. 121). The court erred in overruling the special demurrers above discussed.

Ground 7 of the special demurrers was also improperly overruled. The portion of paragraph 9 which it attacked did not allege that any current Red Line Red List in effect on March 23, 1933, contained the articles ordered by the plaintiff, but shows that the claimed right to purchase the specific goods was by virtue of the original list which, as we have seen, the defendant was not bound to maintain to March 23, 1933, and, as elsewhere shown in the petition, the defendant had in fact reduced the list to 66 items on September 19, 1932.

Stripped of the allegations attacked by the special demurrers, the petition merely shows the terms of the written contract which provided for a change of lists, and shows that the plaintiff ordered goods from the current Red Line Red List in such an amount that 45 % of the invoices, when applied against the "credit memorandum," amounted to only $279.94, leaving an unconsumed balance of $1294.99. It follows that the plaintiff did not perform as required by the written contract, and that under its terms the balance remaining on the conditional credit was not available to the plaintiff but was forfeited to the defendant. No cause of action was set forth, and the trial court erred in overruling the general demurrer, and as all proceedings thereafter were nugatory it is unnecessary to pass on other assignments of error.

*Judgment reversed. Stephens, P. J., concurs. Felton, J., concurs specially.*